UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MATTHEW STARR,                )
    Plaintiff,            )
                    )
                    )
    v.                    )   C.A. No.  16-10062-MLW
ROBERT MEANEY,                )
    Defendant.            )

MEMORANDUM AND ORDER

WOLF, D.J.                                    March 22, 2017

In a December 5, 2016 Report and Recommendation (the "R&R"), the Magistrate Judge recommended that defendant Robert Meaney's Motion to Dismiss be allowed based on qualified immunity. Plaintiff Matthew Starr submitted objections to the Report and Recommendation. The court has reviewed de novo the issues to which proper objection has been made. See Fed. R. Civ. P. 72(b)(3). The court finds the Report and Recommendation to be thorough and persuasive. It is, therefore, being incorporated in this Memorandum and adopted. Accordingly, the motion to dismiss is being allowed.

Nevertheless, the court is addressing Starr's objections briefly. Starr argues, in part, that the Magistrate Judge erred in stating that his work as an auxiliary police officer on paid details was "infrequent," R&R at 7, n.6, and relying on this

inference to find that a reasonable police officer would not have known that Starr was a public employee who could be not properly be denied reappointment for exercising his First Amendment rights to free speech and to petition for the redress of grievances.

In his Complaint Starr alleges the following.  He was a Medfield, Massachusetts auxiliary police officer.  Comp. ¶¶4-6. "Auxiliary police officers in Medfield are considered special police officers when performing paid details."  Id. ¶7.  He served as an auxiliary police officer or special officer at several events a year from 2010 to 2013.  Id. ¶8.  In 2014 and the first half of 2015 Starr worked several parades or similar events as an auxiliary police officer.  Id. ¶10.  When he served as a special police officer, Starr was paid.  Id. ¶¶8, 10.  In 2015, Starr was told by Meaney that he would no longer be allowed to work as an auxiliary police officer.  Id. at 22.  Starr contends that he was deprived of this opportunity because he had appealed the decision to deny him appointment as a regular police officer, and exposed Meaney's failure to investigate and evaluate the other candidates properly. Id. ¶23.  As a result, Starr missed working at least two paid details in 2015.  Id. ¶1.

Accepting these allegations as true, and drawing reasonable inferences in favor of Starr, the relevant facts for qualified immunity analysis are that Starr worked several times a year as an

auxiliary police officer and was sometimes, but not always, paid for his work. The Magistrate Judge assumed, without finding, that someone who worked for a municipality occasionally and was sometimes paid has a constitutional right not to be deprived of the opportunity to continue that work in retaliation for his speech or petitioning. This court also assumes, without finding, such a right exists. The question for qualified immunity analysis, therefore, is "whether in the particular factual context of [this] case, a reasonable officer [in Meaney's position] would have understood that his [alleged] conduct violated [that] right." Stamps v. Town of Framingham, 813 F.3d 27, 34 (1st Cir. 2016).

The Magistrate Judge correctly concluded such a reasonable police officer would not in 2015 have known that the alleged conduct at issue violated the First Amendment. In 2011, the First Circuit said it was "leaving for another day," the question of whether an unpaid volunteer had an interest in not being denied a continued opportunity to serve that is protected by the First Amendment. See Barton v. Clancy, 632 F.3d 9, 26 (1st Cir. 2011). It held, however, that as of 2006, "the law was not sufficiently clear to put [defendant] on notice that declining to reappoint [plaintiff] to [a] volunteer position . . . in retaliation for his First Amendment activities was unlawful." Id. Neither the Supreme Court nor the First Circuit has since decided whether a volunteer has such First Amendment protection. Nor is there a "robust

3

consensus of cases of persuasive authority" in other Circuits clearly establishing such a right. Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2084 (2011)(internal quotation omitted); see also Plumhoff v. Rickard, 134 S.Ct. 2012, 2023 (2014).

As the Magistrate Judge recognized, it was clearly established in 2015 that a paid public employee, including a temporary public employee, has a right protected by the First Amendment not to be retaliated against for speaking or petitioning to redress a grievance. See, e.g., Nieves-Villaneva v. Soto-Rivera, 133 F.3d 92, 98 (1st Cir. 1997); Barton, 632 F.3d at 27.

In this case, Starr was neither exclusively an unpaid volunteer nor exclusively a paid municipal employee. He served as an auxiliary police officer only several times a year and was only sometimes paid for doing so. There appears to be no case addressing such a hybrid situation. In view of the uncertainty concerning whether a volunteer has a protected right not to be retaliated against for First Amendment activity and the lack of any case law concerning individuals who are only occasionally paid for their government service, let alone a "robust consensus of persuasive authority on the issue," al-Kidd, 131 S.Ct. at 2084, the Magistrate Judge correctly concluded that Meaney has qualified immunity for Starr's claim against him.

In his objections to the Report and Recommendation, Starr also argues that the Massachusetts Ethics statute, M.G.L. c. 268A, defines "municipal employee" to include individuals who serve without compensation on an intermittent basis. This argument is not addressed in the Report and Recommendation. There appears to be no reference to Chapter 268A in plaintiff's submissions to the Magistrate Judge. Therefore, the court need not consider it. See Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987). However, the court finds that the statute does not alter the conclusion that Meaney has qualified immunity for Starr's claims.

The fact that an individual is deemed a municipal employee subject to state ethical obligations does not necessarily mean he is a public employee for First Amendment purposes. In Barton, a Massachusetts case, the First Circuit in 2011 noted that some Circuits had found volunteers to be protected against retaliation by the First Amendment based on state statutes providing that they be treated as public employees. See 632 F.3d at 25. The First Circuit, however, did not suggest that Chapter 268A, which was enacted in 1962 and in existence in 2011, had this effect. Id. In any event, this court finds that the statute would not have put a reasonable person in Meaney's position on notice that Starr had First Amendment rights that Meaney's alleged conduct violated.

In view of the foregoing, it is hereby ORDERED that:

1.   The attached Report and Recommendation (Docket No. 25) is ADOPTED and INCORPORATED in this Memorandum.

2.   The Motion to Dismiss (Docket No. 7) is ALLOWED.

3.   This case is DISMISSED.


UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MATTHEW STARR,
    Plaintiff,


    v.                                   CIVIL ACTION NO. 16-10062-MLW


ROBERT MEANEY,
in his individual capacity,
    Defendant.


REPORT AND RECOMMENDATION ON
DEFENDANT ROBERT MEANEY'S
MOTION TO DISMISS (#7).

KELLEY, U.S.M.J.

## I. Introduction.

Plaintiff Matthew Starr brought this action against Robert Meaney under a theory of retaliation for the exercise of First Amendment rights in violation of 42 U.S.C. § 1983. (#1.) Defendant filed a motion to dismiss (#7); plaintiff responded in opposition (#11); a hearing was held on the motion on November 7, 2016 (#18); and defendant and plaintiff submitted supplemental briefs thereafter, (#19) and (#20) respectively. At this juncture the motion to dismiss stands ready for decision.

## II. The Facts.

The facts as set out in the complaint are as follows. Defendant was the Medfield chief of police during the relevant period. (#1 ¶ 3.) Plaintiff began serving as an auxiliary police officer

for the Medfield Police Department in 2009. *Id.* ¶ 1. As an auxiliary officer, plaintiff worked unpaid details; at times, as an auxiliary police officer, he worked paid details at the customary hourly rate as a "special police officer."[1] *Id.* ¶ 8. From 2010 through the first half of 2015, plaintiff served as an auxiliary police officer or special police officer at several events each year. *Id.* ¶¶ 8, 10. Toward the end of 2011, plaintiff voluntarily turned over his license to carry a firearm to defendant[2] in response to an incident at plaintiff's regular place of employment that occurred in November 2011. *Id.* ¶ 9. Plaintiff regained his license to carry in 2012 or 2013. *Id.*

On April 6, 2015, plaintiff submitted an application for employment as a full-time regular police officer to the Medfield Police Department. *Id.* ¶ 11. The Medfield Police Department investigated plaintiff's background as part of the standard review process for the job. *Id.* Plaintiff was the highest-ranked candidate on the civil service certification for appointment at the time. *Id.*

On May 25, 2015, plaintiff worked as an auxiliary officer for the Medfield Memorial Day celebration. *Id.* ¶ 13. Plaintiff expected to continue to work as an auxiliary officer and special officer unless he was appointed as a full-time regular officer in Medfield or another community. *Id.*

On June 16, 2015, the Medfield Board of Selectmen (the Board), the appointing authority in Medfield, bypassed[3] plaintiff for appointment as a regular officer and appointed four lower-ranking candidates over him. *Id.* ¶ 14. Plaintiff alleges that the sole justification for the Board's action was its reliance on defendant's recommendation. *Id.* Plaintiff learned of the Board's

---

[1] "Auxiliary police officers in Medfield are considered special police officers when performing paid details. At this time, they have full police powers, wear uniforms with a Medfield Police Department badge, and carry guns, radios, and handcuffs." (#1 ¶ 7.)

[2] Defendant, as the Medfield chief of police, was the issuing authority for a license to carry. (#1 ¶ 9 n. 1.)

[3] A "bypass" occurs when a Massachusetts appointing authority appoints a lower-ranked candidate over a higher-ranked candidate. (#1 ¶ 14 n. 2.)

decision during a July 1, 2015 meeting with defendant and the background investigator assigned to plaintiff's application. *Id.* ¶ 15. Plaintiff was told that he was bypassed because the investigator saw him smoking.[4] *Id.* Several weeks later, on July 28, 2015, plaintiff appealed the Board's bypass decision to the Massachusetts Civil Service Commission. *Id.* ¶ 16. On August 18, 2015, plaintiff received a letter from Medfield, as required by Mass. Gen. Laws ch. 31, stating the reasons why plaintiff was not appointed. *Id.* ¶ 17. Other than his smoking, plaintiff was unaware of the other reasons set out in the letter prior to his reading the document. *Id.*

On August 25, 2015, plaintiff and his counsel attended a pre-hearing conference at the Civil Service Commission.[5] *Id.* ¶ 18. Plaintiff's appeal was discussed at the conference, and he made clear his intention to pursue all background material regarding the lower-ranked candidates appointed over him, as well as all information germane to the selection process for these candidates. *Id.* Plaintiff is of the opinion that defendant was concerned by plaintiff's declaring his intent to investigate the appointment process, as plaintiff was calling into question defendant's vetting of the candidates and was announcing his intent to uncover deficiencies in the selection process. *Id.* ¶ 19.

---

[4] Defendant directs the court to Mass. Gen. Laws ch. 41, § 101A, which states that "no person who smokes any tobacco product shall be eligible for appointment as a police officer . . . in a city or town . . . ." (#8 at 2 n. 2.)

[5] The record does not reveal the outcome of this appeal; presumably, it was denied. Defendant states in his motion to dismiss that plaintiff was not hired as a regular police officer because he failed to list two previous jobs on his application from which he was fired; because he was seen smoking; and because he had carried a gun on the campus of Framingham State University, which the Civil Service Commission had previously noted in 2012 as a reason to bypass plaintiff in an application to the Department of Corrections. (#8 at 2 n. 3.)  This case concerns only plaintiff's not being allowed to work as an auxiliary officer, not his failure to be hired as a regular officer.  It is not clear at this stage of the case whether any of the reasons defendant lists for plaintiff's not being appointed as a regular officer were also reasons for his not being allowed to continue to work as an auxiliary officer, and the court does not consider these facts in deciding the motion to dismiss.

After the conference, the Town of Medfield produced the applications and background material for the candidates who were selected over plaintiff. *Id.* ¶ 20. The documents showed that defendant recommended appointing the other candidates before he learned of plaintiff's smoking violation and before the background check for at least one of the candidates had been completed. *Id.* Plaintiff claims that the candidate for whom the background check had not been completed had a criminal record, had been terminated from several government jobs, and had failed two drug tests at a prior government job. *Id.* Plaintiff avers that these facts demonstrate that defendant failed to vet thoroughly the other candidates. *Id.* ¶ 21. Plaintiff alleges that the appeal also revealed that defendant did not disclose any negative information about the other candidates to the Board, nor did he inform the Board that plaintiff was the highest-ranked candidate. *Id.*

On September 15, 2015, plaintiff was informed that he was no longer allowed to work any upcoming events as an auxiliary officer because Town Counsel might "frown upon it." *Id.* ¶ 22. Plaintiff has not been allowed to work any events as an auxiliary officer since being banned by defendant. *Id.* ¶¶ 1, 22-23. Plaintiff takes the position that his not being allowed to work as an auxiliary police officer is the result of his outing defendant's failure to perform adequately his duties in the candidate appointment process. *Id.* ¶ 23. "By not being allowed to continue working as an auxiliary police officer and/or special police officer, Starr has suffered lost wages, emotional distress, extreme embarrassment, and reputational harm." *Id.* ¶ 24. Plaintiff asks the court to enjoin defendant from retaliatory treatment of plaintiff, to order defendant to allow plaintiff to work as an auxiliary officer, to pay damages for lost wages, emotional distress "and other injuries," and to pay punitive damages and attorneys' fees and costs. (#1 at 6-7.)

### III. Standard of Review.

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must "'accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor.'" *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley*, 657 F.3d at 46 (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." *Id.* at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

## IV. Qualified Immunity.

"The qualified immunity doctrine provides defendant public officials an immunity from suit and not a mere defense to liability." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009). To prevent unnecessary litigation, "immunity is to be resolved at the earliest possible stage in litigation." *Id.*

"Qualified immunity protects government officials from trial and monetary liability unless the pleaded facts establish (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Marrero-Mendez v. Calixto-Rodriguez*, 830 F.3d 38, 43 (1st Cir. 2016) (internal citations and quotation marks omitted). "This doctrine gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Hunt v. Massi*, 773 F.3d 361, 367 (1st Cir. 2014) (internal citation and quotation marks omitted). The First Circuit recently reviewed the qualified immunity doctrine and said:

> This court adheres to a two-step approach to determine whether a defendant is entitled to qualified immunity: 'We ask "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation.'" *Mlodzinski* [*v. Lewis*], 648 F.3d [24], 32 [(1st Cir. 2011)] (quoting *Maldonado v. Fontanes*, 568 F.3d [at] 269). The second prong, in turn, has two elements: 'We ask (a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right.' *Id.* at 32-33.

*Stamps v. Town of Framingham*, 813 F.3d 27, 33-34 (1st Cir. 2016). "If either of the two prongs is not met – i.e., if the facts do not show a constitutional violation or the right in question was not clearly established – the officer is immune. Either prong may be addressed first, depending on the circumstances in the particular case at hand." *Marrero–Méndez*, 830 F.3d at 43 (internal

6

citation and quotation marks omitted); *Raiche v. Pietroski*, 623 F.3d 30, 35 (1st Cir. 2010)

("These two prongs of the analysis need not be considered in any particular order, and both

prongs must be satisfied for a plaintiff to overcome a qualified immunity defense").

## V. Discussion.

The nub of the question here is whether, in September 2015, the law regarding whether

plaintiff should be treated as a public employee was so clearly established as to put defendant on

fair notice that he was violating plaintiff's First Amendment Rights by not allowing him to work

as an auxiliary officer. As set out above, plaintiff's work for the Medfield Police Department

consisted of work as an unpaid auxiliary officer, which included the occasional special officer

work for which he was paid.[6] If plaintiff is deemed to be a volunteer, defendant unquestionably

is entitled to qualified immunity, because the law regarding an unpaid volunteer's termination

and whether such an action triggers First Amendment scrutiny remains unclear in this circuit. In

*Barton v. Clancy*, 632 F.3d 9 (1st Cir. 2011), the First Circuit dismissed a plaintiff's First

Amendment retaliation claim for non-reappointment to an unpaid position on qualified immunity

grounds. The *Barton* court explicitly did *not* decide whether terminating a volunteer's position

could trigger scrutiny of First Amendment rights. *Id.* at 26 (noting that the court was "[l]eaving

for another day the question of whether Barton has demonstrated a First Amendment violation

based on the non-reappointment to a volunteer position").

Plaintiff assumes that because he was paid as a special police officer, he has the status of

a public employee. (#11 at 4-5; #20.) Plaintiff may well be right, but for purposes of deciding

---

[6] The record is thin concerning how much compensated special officer work plaintiff performed and the details about that work, for example, how an auxiliary officer obtains paid assignments and how frequently. A close reading of the complaint suggests that the paid work was infrequent: one can infer from the complaint that between May and December 2015 plaintiff claims to have missed "at least two paid events." (#1 at 1-2.)

whether defendant is entitled to qualified immunity, the issue is whether the law was sufficiently

clear on that point so as to put defendant on notice of it. If plaintiff is considered to be a public

employee, as plaintiff points out, the court is guided by the standard articulated by the Supreme

Court in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the application of which is explained in

detail in *Decotiis v. Whittemore*, 635 F.3d 22, 29 (1st Cir. 2011).[7] The court here need not

engage in the analysis set out in *Decotiis*, because the court concludes that the law concerning

the threshold question, whether defendant was on notice that plaintiff should be treated as a

public employee, was not sufficiently clear, and so defendant is entitled to qualified immunity.

Defendant, in his motion to dismiss, asserted the defense of qualified immunity, correctly

arguing that the law was not clear that volunteers are protected against retaliatory government

discharge.[8] (#8 at 4.) At the hearing on the motion, defendant did an about-face and stated that at

the time he filed the motion, he did not realize plaintiff was paid for his work, and because he

was paid, plaintiff was a public employee.[9] In his post-hearing memorandum, defendant

reiterated his claim of qualified immunity; stated that plaintiff was a public employee; and

argued that the complaint should be dismissed because under the standard articulated in *Garcetti*

---

[7] In *Decotiis,* the First Circuit endorsed a three-part test: in order to prevail on a § 1983 retaliation claim, a public-employee plaintiff must establish: (1) that he spoke as a citizen on a matter of public concern; (2) that his interest in commenting on these matters outweighed defendant's interest in the efficient performance of its public services; and (3) that the protected expression was a substantial or motivating factor in the defendant's adverse employment decision. *Decotiis*, 635 F.3d at 29. The First Circuit acknowledged that applying that test, particularly in the context of a motion to dismiss, "has proven to be a tricky business," "because the inquiry is so highly fact intensive and context specific." *Id.* at 26.

[8] Inexplicably, defendant also argued that plaintiff had alleged a violation of his due process rights, and included a lengthy argument against that claim, *see* #8 at 6-7 . In fact, plaintiff did not make any such allegation, *see* #1 at 6, and the court will not address that issue.

[9] Defendant's change of position was curious, because his motion to dismiss noted that plaintiff was sometimes paid for his work. (#8 at 3.)

*v. Ceballos*, plaintiff's speech was not protected as he was not speaking as a citizen addressing matters of public concern. (#19 at 2-3.)

Plaintiff fails to cite to any case law from the Supreme Court or this circuit demonstrating that an individual such as plaintiff – who worked occasionally and was infrequently paid for his work – should be considered to be a public employee for purposes of a First Amendment retaliation claim. His first pass at the issue is to simply assert that because "Medfield paid Starr wages as part of his work as an auxiliary officer," cases such as *Lynch v City of Boston*, 180 F.3d 1 (1st Cir. 1999), which held that "non-compensated positions on voluntary boards" were not protected against retaliatory discharge, and *Ziskend v. O'Leary*, 79 F. Supp. 2d 10, 13 (D. Mass. 2000), where the District Court held that auxiliary police officer positions are not protected from retaliatory discharge, are inapplicable.[10] (#11 at 4.) In his post-hearing memorandum, plaintiff cites *Welch v. Ciampa*, 542 F.3d 927 (1st Cir. 2008) for the proposition that "it is clearly established that the loss of paid details and similar benefits are a cognizable adverse action under the First Amendment." (#20 at 2.) *Welch*, however, concerned a full-time police officer who alleged that in retaliation for his exercise of First Amendment Rights he was not reassigned to a "specialist position," which included an additional stipend, the opportunity for substantial overtime pay, and additional pay related to detail and court assignments. The First Circuit held that this constituted an adverse employment action under § 1983. *Welch*, 542 F.3d at 936. Unlike the plaintiff here, the plaintiff in *Welch* was unquestionably a public employee under the law of this circuit. Also, the loss suffered by the *Welch* plaintiff as a result of the defendants' actions was both substantial and definite: Welch was guaranteed additional money as part of his appointment. *Id.* In reaching its conclusion, the *Welch* court likened the plaintiff's non-

---

[10] There is no mention in the *Ziskend* case whether the officer in question was ever paid for his auxiliary officer work.

reappointment to cases in which a public employee plaintiff lost "substantial overtime pay and additional duties" or "supervisory positions" resulting in a lower position and rank, and considered Welch's loss to be "a significant diminution in his job responsibilities." *See id.* (citing to *Martinez–Vélez v. Rey–Hernández*, 506 F.3d 32, 40 (1st Cir. 2007) and *Acosta–Orozco v. Rodriguez–de–Rivera*, 132 F.3d 97, 101 (1st Cir. 1997)).

Nor does the *Decotiis* case help plaintiff. There, the First Circuit, concluding that the state-contractor plaintiff was a public employee, anchored its finding to *Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 678 (1996), a case in which the Supreme Court extended public employee status to government contractors. *See Decotiis*, 635 F.3d at 26 n. 1 (citing to *Umbehr*, 518 U.S. 668). Plaintiff is not a government contractor. Finally, he offers two cases from other circuits for the proposition that plaintiff's fluctuating status – from volunteer to paid employee – has no bearing on his classification as a public employee. (#20 at 3.) These cases do not help him, as one was already distinguished by the First Circuit in *Barton* and the other fails to comport with the law of this circuit.[11]

The court need not decide plaintiff's status to resolve this case, however, because it is apparent that a reasonable person in defendant's position could not have known that he was

---

[11] In his post-hearing brief, arguing that plaintiff is a public employee, plaintiff cites *Mosely v. Board of Educ. of City of Chicago*, 434 F.3d 527 (7th Cir. 2006) and *Fotopolous v. Board of Fire Com'rs of Hicksville Fire Dist.*, 11 F. Supp. 3d 348 (E.D.N.Y. 2014). (#20 at 3.) In *Barton*, the First Circuit expressly distinguished *Mosely* due to its reliance on Seventh Circuit case law and state statutes, and the court explicitly did not adopt the holding in *Mosely*, that the plaintiff's volunteer status was irrelevant to the court's First Amendment analysis. *See Barton*, 632 F.3d at 25.
    *Fotopolous*, a case addressing the suspension and coerced resignation of a plaintiff who worked as an unpaid volunteer firefighter and a paid dispatcher for the fire department, relied on Second Circuit case law in finding that defendants' actions constituted an adverse employment action for the sake of the First Amendment analysis. *See Fotopolous*, 11 F. Supp. 3d at 364-365. The *Fotopolous* court's conclusion is not the law in this circuit. *See Barton*, 632 F.3d at 12, 26 (leaving for another day the question of whether the deprivation of a volunteer position constitutes a violation under the First Amendment).

deciding not to reappoint a public employee as opposed to a volunteer when he chose to ban

plaintiff from all auxiliary and special officer work.

Addressing the second prong of the qualified immunity analysis,

> [t]he inquiry into whether a right is clearly established must be undertaken in light
> of the specific context of the case, not as a broad general proposition. When
> determining whether a reasonable [state actor] would have been aware of a
> constitutional right, we do not impose on the official a duty to sort out conflicting
> decisions or to resolve subtle or open issues. In order to show that a principle is
> clearly established . . . a plaintiff ordinarily must identify cases of controlling
> authority at the time of the incident or a consensus of cases of persuasive
> authority such that a reasonable [actor] could not have believed that his actions
> were lawful.

*Mead v. Indep. Ass'n*, 714 F. Supp. 2d 188, 197 (D. Me. 2010), *aff'd*, 684 F.3d 226 (1st Cir.

2012) (some alteration in original) (internal citation and quotation marks omitted).

The absence of First Circuit cases or any out-of-circuit consensus concerning whether a

person in plaintiff's position is held to be a public employee for purposes of a First Amendment

retaliation claim is determinative. This void demonstrates that a reasonable individual in

defendant's position could not have been given fair notice of the potential ramifications of his

decision. Thus, defendant is entitled to qualified immunity. The complaint should be dismissed

in its entirety.

## V. Conclusion.

For all of the reasons stated, I RECOMMEND that Defendant Robert Meaney's Motion

to Dismiss (#7) be ALLOWED.

## VI. Review by District Court Judge.

The parties are hereby advised that any party who objects to this recommendation must

file specific written objections with the Clerk of this Court within 14 days of the party's receipt

of this Report and Recommendation.  The objections must specifically identify the portion of the

recommendation to which objections are made and state the basis for such objections.  The

parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s / M. Page Kelley
M. Page Kelley
United States Magistrate Judge

December 5, 2016